**Gilbert Lewis SPEARS, Plaintiff,**

**v.**

**UNITED STATES of America, United States Deputy Marshal Menis Adkins, Dr. Tom J. Altizer, and Cabell Huntington Hospital, Defendants.**

**Civ. A. No. 2297.**

United States District Court
S. D. West Virginia,
Huntington Division.

April 6, 1967.

**24**

Gilbert Lewis Spears, pro se.

Milton J. Ferguson, U. S. Atty., Huntington, W. Va., for defendant, the United States.

W. Warren Upton, Asst. U. S. Atty., Charleston, W. Va., for defendant U. S. Deputy Marshal Menis Adkins.

No appearance for defendant Dr. Tom J. Altizer.

Edward W. Eardley, Steptoe & Johnson, Charleston, W. Va., for defendant Cabell Huntington Hospital.

CHRISTIE, District Judge:

This civil action is to recover damages for personal injuries under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 et seq., for certain alleged tortious acts that took place while plaintiff was in the custody of a federal officer prior to his having pleaded guilty to a charge of armed robbery and for which he was sentenced to a term of 15 years imprisonment by this Court. Plaintiff sought and was granted leave, under 28 U.S. C.A. § 1915(a),[1] to proceed in *forma pauperis,* and his *pro se* pleadings, mo-

---

1. "Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress."

tions, et cetera, indicate he has a workable knowledge of the legal process.

Service of process was effected upon all defendants save and except Dr. Tom J. Altizer, and plaintiff has moved, under 28 U.S.C.A. § 1404(a), for partial transfer, insofar as his action pertains to Dr. Altizer, to the United States District Court for the Eastern District of Virginia where Dr. Altizer now resides. He has also moved, under 28 U.S.C.A. § 1915(d),[2] for appointment of counsel. The defendants, United States of America, Menis Adkins and Cabell Huntington Hospital, have severally moved for dismissal upon the pleadings on a variety of grounds. The various motions will be treated separately.

### APPOINTMENT OF COUNSEL

Plaintiff is laboring under some misconceptions insofar as the right to have counsel appointed in a civil case is concerned. While the case of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, and subsequent developments [3] have greatly expanded the 6th Amendment's guarantee of right to counsel in criminal cases where one's liberty is at stake,[4] they have no application to matters purely of a civil nature. Kregger v. Posner, 248 F.Supp. 804 (D. C.Mich.1966). Indeed, 28 U.S.C.A. § 1915(d) protects no right, rather it creates a *privilege*, the exercise of which rests in the sound discretion of the Court. United States ex rel. Gardner v. Madden, 352 F.2d 792 (9th Cir. 1965); Moss v. Thomas, 299 F.2d 729 (6th Cir. 1962). In fact, in civil matters the Court's power is limited to *requesting* an attorney to represent an indigent rather than *directing* him to do so. Reid v. Charney, 235 F.2d 47 (6th Cir. 1956).

Likewise, whether institution of an action in *forma pauperis* under 28 U.S.C.A. § 1915(a) will be entertained at all is directed to the Court's discretion, Cole v. Smith, 344 F.2d 721 (8th Cir. 1965). And the fact that the privilege was granted in this instance does not indicate that the Court is willing to assume the responsibility of securing counsel to prosecute plaintiff's purely private claim for monetary damages. By analogy, it may be noted that it is generally held that the 6th Amendment that gives right of counsel to the accused in a criminal case does not apply to post-conviction proceedings because of their civil nature, even though in such cases the personal liberty of the person is involved. United States ex rel. Marshall v. Wilkins, 338 F.2d 404 (2d Cir. 1964); Dillon v. United States, 307 F.2d 445 (9th Cir. 1962); La Clair v. United States, 374 F.2d 486 (7th Cir. 1967). Our own Fourth Circuit has likewise denied the existence of the right in parole revocation hearings, Jones v. Rivers et al., 338 F.2d 862 (1964) and Gaskins v. Kennedy et al., 350 F.2d 311 (1965), where the liberty of the parolees was also involved. Likewise, our research has failed to reveal any established rule of due process that extends the right to a plaintiff in purely civil litigation such as here involved.

Thus, it is seen that an indigent party in a civil case only has a privilege, and that privilege is to request the Court in the exercise of its discretion to appoint counsel for him. The general rule seems to be that, before the Court is justified in exercising its discretion in favor of appointment, it must first appear that the claim has some merit in

---

2. "The Court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."

3. Criminal Justice Act of 1964, 18 U.S.C.A. § 3006A.

4. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defense."

fact and law. Ligare v. Harries, 128 F.2d 582 (7th Cir. 1942); Jefferson v. Heinze, 201 F.Supp. 606 (D.C.Cal.1962); De Maris v. United States, 187 F.Supp. 273 (D.C.Ind.1960); Miller v. Pleasure, 296 F.2d 283 (2d Cir. 1961); Urbano v. Sondern et al., 41 F.R.D. 355 (D.C. Conn.1966). Were it otherwise, the appointment in most instances would work a hardship on counsel with no concomitant benefit to the party requesting it.

■ While it is the recognized duty of the Court to be alert to the protection of indigents in their lawful rights, this does not mean that it must open its forum to obviously frivolous and dubious claims under whatever guise they may be presented. Nor do we perceive it to be our obligation to request a member of the bar to undertake the prosecution of a c'aim that is patently without substance in law or fact. For, as was aptly pointed out by Judge Boreman, speaking for the court in *Jones,* supra, "some consideration should be shown for the members of the legal profession also and their rights to provide for their dependent loved ones and to build some semblance of financial protection and security against the time when they may be forced by age or disability to discontinue the practice of their profession."

Here the plaintiff has made no allegation or showing that he has tried and *been unsuccessful in procuring counsel* to accept his case on a fee basis contingent on a recovery, and there are no organized legal aid programs in any of the counties comprising this division of the court to which plaintiff's case can be assigned. The attorneys at the bar of this court in this division, even before the enactment of the Criminal Justice Act, have been most cooperative in accepting appointment whenever called upon to do so. This is true in both criminal and post-conviction proceedings and we have no reason to believe that an attorney would not respond in this instance, without any expectation of pay, if the Court requested him to do so. But in such matters, we are mindful of what Lincoln once said, "A lawyer's time

and advice is his stock in trade," and we do not believe they should be expropriated except for compelling reasons. Thus, in this instance, before we would be justified in preempting the attorney's "stock in trade" in behalf of the plaintiff, we conceive it to be our duty to first ascertain that the claim asserted has some substantial merit.

Our task in this regard is made easier by reason of the fact that we are thoroughly familiar with the historical background of the grievance complained of. This is so because of a post-conviction hearing we granted the plaintiff under 28 U.S.C.A. § 2255, wherein evidence was heard relating to the tortious act upon which this civil action is predicated. The issues raised in that proceeding were decided by this Court against the plaintiff (250 F.Supp. 698), which decision was later affirmed on appeal. The view we take of the present case is that if there be any need for legal representation, for the reasons hereinafter assigned, such need would only go to plaintiff's claim against the United States of America, and that claim relates to the alleged failure of the deputy marshal to protect the plaintiff from the infliction of alleged mistreatment by Dr. Tom Altizer in the course of his examination of the plaintiff at Cabell Huntington Hospital to determine whether he was unconscious or simply feigning unconsciousness.

■ At the 2255 hearing, the plaintiff contended, among other things, that his plea of guilty was psychologically induced by rough and inhumane treatment at the hands of Dr. Altizer in that the doctor squeezed or crushed his testicles. The examination was made necessary when the plaintiff has previously staged a "falling out scene" in the United States Commissioner's office where he had been taken for the purpose of a preliminary hearing. He was immediately taken to the hospital by the deputy marshal and there turned over to Dr. Tom Altizer for examination. The doctor testified at the 2255 hearing that squeezing one's testicles is an approved and accepted

method by the medical profession to determine whether one is really unconscious or is only feigning unconsciousness; that in applying this test to the plaintiff he used no more pressure or force than was necessary to make the diagnosis, and that the test thus applied proved the plaintiff was in fact feigning unconsciousness. The plaintiff, though represented at the 2255 hearing by two highly competent court-assigned attorneys, produced no evidence that the test used was not a medically recognized means of detecting feigning in such circumstances, nor that more force was used than was prudent and necessary, nor that the plaintiff suffered any injury therefrom. The uncontradicted evidence further showed that the deputy marshal did not enter the examination room and did not see or supervise the examination in any way, and even if it could in some way be shown that the doctor applied more force than was necessary under the circumstances, it would be unreasonable to charge the deputy marshal with the duty of foreseeing such a result. The law does not require omniscience.

At this point it is noteworthy to point out in regard to plaintiff's motion for appointment of counsel that one of the grounds assigned by him for 2255 relief was that of ineffective representation by his self-employed attorney at his arraignment and sentencing. This Court found from the evidence adduced at the hearing that the charge was entirely without merit as did the appellate court on appeal. More recently, in a letter to his court-appointed attorneys for the 2255 hearing, a copy of which was sent to this Court and the panel of judges who sustained this Court on appeal in the denial of the post-conviction relief, he takes them to task for mishandling his case—a wholly unwarranted and unjustified accusation against two competent and reputable members of the Huntington Bar, one of whom has just recently been elected president of the State Bar. However, as was found in *Urbano,* supra, "where there is no risk to run" it may be

expected that an inmate in the "monotonous hours of his incarceration" will conjure up a variety of reasons for his predicament, among which is to find fault with his attorney and to "harass" those officials who have it as their responsibility and duty to thwart his efforts to defeat the judicial process and thereby gain undeserved freedom.

For these and other reasons hereinafter appearing, the Court is convinced that, viewed in its proper context, the cause of action relied upon is completely lacking in ostensible merit, is patently frivolous and fails to present any of the requisites to bring it within the exception to the general rule—that counsel may not be appointed in a purely civil case except where meritorious circumstances are present to compel it. Indeed, the law is that if the Court determines the action to be frivolous, it may not only refuse to appoint counsel, but may and should dismiss it on that ground. Kinney v. Plymouth Rock Squab Co., 236 U.S. 43, 35 S.Ct. 236, 59 L.Ed. 457 (1915); Fletcher v. Young, 222 F.2d 222 (4th Cir. 1955). Plaintiff's motion to appoint counsel is accordingly denied.

Defendants Adkins, United States of America and Cabell Huntington Hospital have moved to dismiss the complaint on a number of grounds. While, as above noted, defendant Altizer has not been served with process and is not before the Court, we deem it useful to also discuss his position insofar as the action presently affects him.

### DEFENDANT MENIS ADKINS

Insofar as defendant Adkins is concerned, plaintiff states on page 3 of the complaint that "(U. S. DEPUTY MARSHALL (sic) MR. MENIS ADKINS) IS SHOWN FOR IDENTIFICATION PURPOSES ONLY, * * * AS MR. ADKINS WAS ACTING UNDER OFFICIAL DUTY AT THE TIME OF SAID ASSAULT AND INJURIES TO THE PLAINTIFF." No damages are

**28**

asked against Adkins and he has moved to dismiss for failure of the complaint to allege a cause of action as to him. The motion is obviously well taken, for it is axiomatic that in an action in tort any relief granted must be limited to the grievance complained of in the pleading and since here there is no allegation of concurrent wrong and injury by Adkins, the action is not maintainable as to him.

■ However, the action as to Adkins must be dismissed for another reason—for lack of jurisdiction. While Adkins' motion does not challenge the Court's jurisdiction, when lack of jurisdictional requirements is apparent on the face of the complaint it is the duty of the Court, of its own motion, to pass upon the question. Pacific National Ins. Co. v. Transport Ins. Co., 341 F.2d 514 (8th Cir. 1965), cert. denied 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434. Plaintiff, as previously noted, has brought this action under the Federal Tort Claims Act and alleges no other jurisdictional basis, and even if we were to assume that Adkins' alleged actions were such as to give rise to personal liability for the alleged injury, the Federal Tort Claims Act does not create a cause of action against him as an individual merely because he was a governmental employee. Benbow v. Wolf, 217 F.2d 203 (9th Cir. 1954). There being no other basis of jurisdiction asserted with regard to Adkins and the Federal Tort Claims Act having created none, the complaint is accordingly dismissed as to Adkins for lack of jurisdiction as well as for failure to state a cause of action.

### DEFENDANT DR. TOM ALTIZER

■ 28 U.S.C.A. § 1404(a) provides that:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Assuming, for purposes of plaintiff's motion to transfer, that Dr. Altizer's conduct in examining plaintiff which allegedly caused the injuries complained of, was sufficient to constitute him an "employee of the government" within the meaning of 28 U.S.C.A. § 1346(b), it follows, for the reasons enunciated with regard to Adkins, that jurisdiction regarding any personal claim against Dr. Altizer cannot be predicated upon the Federal Tort Claims Act.

■ Consequently, the action is no more maintainable in the Eastern Judicial District of Virginia than it is in the Southern Judicial District of West Virginia. The well established rule is that before an action may be transferred under 28 U.S.C.A. § 1404(a), it must appear to have been originally maintainable in the transferee district [Behimer v. Sullivan, 261 F.2d 467 (7th Cir. 1958) aff'd in Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254]. Thus, the requested transfer here is impermissible. The motion to transfer is accordingly denied.

### DEFENDANT CABELL HUNTINGTON HOSPITAL

■ Any liability of defendant Hospital must, of course, be based upon the misconduct of its employee, Dr. Altizer, under the doctrine of *respondeat superior*. Obviously, the Federal Tort Claims Act does not create a cause of action against a private hospital, nor does it grant jurisdiction to a Federal District Court to entertain an action thereunder such as here alleged. None of the requisites necessary to bestow jurisdiction under the diversity statute [5] have been alleged, and no other basis of federal jurisdiction appearing, the complaint must necessarily be dismissed as to this defendant.

### DEFENDANT UNITED STATES OF AMERICA

■ The United States has moved to dismiss the complaint on the grounds

---

5. 28 U.S.C.A. § 1332.

that Dr. Tom J. Altizer was not an employee of the United States at the time of the alleged incident and even had he been an employee, the Federal Tort Claims Act specifically exempts the United States from liability for assault and battery by an employee of the government. 28 U.S.C.A. § 2680(h).

Granting that the United States is correct in both these contentions, the plaintiff also alleges that upon Dr. Altizer's assaulting him, "Menis Adkins, U. S. Deputy Marshall (sic) (in whose custody plaintiff was at the time) did nothing to prevent the plaintiff from being tortured and injured by said Defendant No. 3, Dr. Altizer." In United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805, while declining to decide whether a claim had been stated, the Supreme Court allowed a suit to be maintained under the Federal Tort Claims Act for the alleged negligence of a prison guard in allowing other inmates to beat the plaintiff and cause serious injury. There the Court said:

"A federal prisoner can sue under the Federal Tort Claims Act to recover damages from the United States for personal injuries sustained during confinement in a federal prison and resulting from the negligence of a government employee."

Thus, in view of the allegations made in the complaint, we cannot say as a matter of law that plaintiff has failed to state a claim against the United States. Accordingly the motion of the United States to dismiss the complaint is denied.

### DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT

 While granting the complaint, as such, alleges a cause of action against the United States, the United States has also moved for summary judgment on the ground that the certified transcript of the post-conviction hearing under 2255 in this court in the case of Spears v. United States, Civil Actions 2113, 2116 and 2118, 250 F.Supp. 698, which dealt extensively with this same incident, establishes as a matter of law that defendant Adkins was in no manner negligent in the care and custody of the plaintiff. Pertinent excerpts from the transcripts are filed with the motion as parts thereof.

We will assume for the purpose of the motion that the "test" applied to plaintiff by Dr. Altizer to determine whether or not he was feigning unconsciousness caused some actual injury. But even with this assumption, it does not follow that defendant Adkins was in some way negligent in his care and custody of plaintiff. It would certainly not constitute actionable negligence on the part of a United States Marshal to take an unconscious prisoner to a well-known and reputable hospital, nor would it be improper to keep the prisoner manacled during the course of a hospital examination, absent an allegation that such interfered with the examination to the detriment of the prisoner. The marshal is charged with responsibility for the prisoner's custody and safekeeping and one would not normally anticipate or foresee the possibility of mistreatment at the hands of a doctor in a well-known and reputable hospital, and, of course, foreseeability of the injurious consequences of one's act or omission is an important element in determining if there was negligence in a given situation.

Plaintiff here alleges that defendant Adkins was present and witnessed the so-called assault. However, since plaintiff was supposedly unconscious at the time, his recollection on the matter is at best questionable (R-37). Marshal Adkins, on the other hand, contends that he was not present but rather that he was making a telephone call to his office in Charleston, West Virginia (R-309-10). Dr. Altizer, the alleged wrongdoer, could not recall whether Adkins was in the room at the time of the "assault," however, he did state that he did not ask

Adkins' permission before administering the "test" (R-367). Thus, in essence, we are faced with an action under the Tort Claims Act for the alleged negligence of a government employee in allowing a duly licensed physician at a reputable hospital to examine a prisoner in his custody who outwardly appeared to be unconscious.

Restatement of Torts (Second), Sec. 448 (1965), states:

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."

The transcript submitted in support of the motion for summary judgment clearly establishes (R-100) that defendant Adkins himself did nothing injurious to plaintiff and that insofar as he entrusted plaintiff to the hospital personnel for examination, he acted as a reasonable prudent person under the circumstances. If we assume for the sake of this motion that defendant Adkins was present at the time Dr. Altizer allegedly assaulted plaintiff, it would be preposterous to contend that he, as a layman, would have knowledge of the nature of this "test" or its application, or that it would be his duty to question the physician's purpose in using it.

The standard of the government's liability under the Tort Claims Act turns on "whether a private individual under like circumstances would be liable under state law." United States v. Muniz, supra, 374 U.S. p. 153, 83 S.Ct. p. 1853. The law in West Virginia is well settled that if a physician adopts a method established and approved by physicians and surgeons generally in the community in which he performs the operation or gives the treatment, at the time thereof, and is not negligent or careless in its application, he is not liable for injuries resulting from such treatment. Browning v. Hoffman, 86 W.Va. 468, 103 S.E. 484 (1920); Dye v. Corbin, 59 W.Va. 266, 53 S.E. 147 (1906); Vaughan v. Memorial Hospital, 103 W.Va. 156, 136 S.E. 837 (1927). The "test" used by Dr. Altizer is medically accepted and whether he used it negligently would depend upon proof by other competent physicians, Roberts v. Gale, 149 W.Va. 166, 139 S.E.2d 272, but, assuming, for the sake of the motion for summary judgment, that he did use more force than was necessary to make the diagnosis, as the plaintiff alleges, it must necessarily follow that it was this act alone by Dr. Altizer that was the sole proximate cause of the injuries, State of West Virginia v. Fidelity & Casualty Company of New York, 263 F.Supp. 88 (S.D.W.Va.1967), and the United States could not be held accountable for it without a showing that its agent Adkins was in some way negligent in permitting it to occur, which, as above shown, he could not be under the circumstances. This is not a situation calling for the application of the rule that a tort-feasor may be held liable for the negligent treatment his victim receives at the hands of a physician, inasmuch as it is clear here that defendant Adkins did not injure plaintiff in any manner.

The acts of Dr. Altizer were acts of a member of a respected profession and the independent judgment of a private physician. Those cases which have predicated liability under the Tort Claims Act for the negligence of government physicians are inapplicable here as are those instances wherein government officials have negligently allowed persons in their custody to be assaulted by fellow prisoners. We accordingly hold that the defendant United States of America's motion for summary judgment is well taken and the same is accordingly granted.

## MOTION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM

By this motion the plaintiff would have the Court order his transfer from the United States Medical Center, Springfield, Missouri, to the Cabell County Jail, Huntington, West Virginia, so that he might consult with appointed counsel "concerning significant aspects" of his civil action. This motion is now moot since the Court has determined that appointment of counsel is not indicated and that the action must be dismissed.

## SUMMARY

In summary, therefore, it is seen (a) that the plaintiff in this action has no absolute right to appointment of counsel and that appointment of counsel for him under the discretionary power of the Court is unjustified because of the non-meritoriousness of the claim asserted; (b) that this action is not maintainable against defendant Adkins for lack of jurisdictional requirements because he, as an individual, is not amenable to suit under the Federal Tort Claims Act, and further, because the complaint fails to state a cause of action against him; (c) that this action may not be transferred as to defendant Dr. Tom Altizer to the United States District Court for the Eastern District of Virginia for service of process and trial there as to said defendant because it could not have been brought there against him in the first instance; (d) that this action is not maintainable against defendant Cabell Huntington Hospital for lack of jurisdictional requirements because it is a private corporate entity and is not amenable to suit under the Federal Tort Claims Act; and (e) that the action cannot be maintained against the defendant United States because the pleadings and transcript of the 2255 hearing show that there is no genuine issue as to any material fact and that the United States is entitled to a judgment as a matter of law under Rule 56(c) of the Federal Rules of Civil Procedure.