**Helen D. WOODSON, Plaintiff,**

v.

**U.S. DEPARTMENT OF JUSTICE, et al., Defendants.**

**Civ. A. No. 91–47 (CRR).**

United States District Court, District of Columbia.

July 24, 1991.

---

Helen D. Woodson, plaintiff pro se.

David Orbuch, Asst. U.S. Atty. for the District of Columbia, with whom was Jay B. Stephens, U.S. Atty., John D. Bates, Asst. U.S. Atty., and Kevin Walasinski, Gen. Counsel's Office, U.S. Bureau of Prisons on the brief, for defendants.

### ORDER

CHARLES R. RICHEY, District Judge.

The Plaintiff, an inmate at the Federal Correctional Institute at Mariana, Florida (hereinafter, "FCI Mariana"), seeks a declaratory judgment to permit her to "waive" good time credits to which she is entitled pursuant to 18 U.S.C. § 4161, *et seq.*, and thereby to prolong her confinement. The Defendant prison officials denied Plaintiff's request to waive good time because the governing legislation provides that, "except a[s] provided a prisoner *shall* be released at the expiration of his term of sentence less the time deducted for good conduct." 18 U.S.C. § 4163 (emphasis added). *See* Plaintiff's Complaint, Exhibit 2. In response to this Court's April 19, 1991 Opinion and Order, the Defendants filed a Motion to Dismiss, alleging that, as a matter of law, Plaintiff has no right to waive accrued good time credits. Upon consideration of the Defendants' motion, the Plaintiff's response[1], the applicable law, and the record herein, the Court hereby denies the Defendants' motion to dismiss and grants the Plaintiff's motion for summary judgment.

■ Summary judgment is appropriate when the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). There is no dispute in this case that the Plaintiff has accrued good time credits. Rather, the dispute centers on whether, as a matter of law, the Plaintiff can waive the good time credits to which she is entitled in favor of remaining incarcerated. Upon a closer review of the law and the legislative purpose of the good time credit system, the Court concludes that the Plaintiff may waive her accrued good time credits.

■ Prisoners have no "right" to a good time credit system. However, once such a system is in place, the prisoner does have a legal interest in any accrued credits, and prison officials have no discretion to deny release. *See Weber v. Willingham,* 356 F.2d 933 (10th Cir.), *cert. denied,* 384 U.S. 991, 86 S.Ct. 1897, 16 L.Ed.2d 1008 (1966); *La Magna v. U.S. Bureau of Prisons,* 494 F.Supp. 189 (D.Conn.1980). *See also* 18 U.S.C. § 4163 (requiring prison officials to release inmate upon valid accrual of good time credit). *Cf. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (while there is no right to benefits of a parole system, revocation of accrued parole benefits requires some due process procedures). Thus, by the very context of the statute and the prevailing case law, the Plaintiff has a right, or entitlement, to use her accrued good time credit in reducing the period of incarceration.[2]

The Plaintiff desires to forego this credit in favor of serving the remainder of her

---

1. Although the Plaintiff does not style her motion as such, the Court construes the Plaintiff's response as a cross-motion for summary judgment. Such treatment is warranted in view of the Plaintiff's *pro se* status, reliance on matters presented outside of the pleadings, and request that the Court should "grant relief" in this case now, prior to the conduct of discovery, as a matter of law. *See Plaintiff's May 30, 1991 Response* at 7.

2. Good time credits only reduce the period of incarceration to be served under the sentence, and do not impact on the underlying sentence. *La Magna v. U.S. Bureau of Prisons, supra,* 494 F.Supp. at 190 (D.Conn.1980). In fact, some courts have held that one released from prison due to good time credits is treated as if he or she were on parole. *See, e.g., Tippitt v. U.S. Bd. of Parole,* 446 F.2d 26 (6th Cir.1971); *Williams v. Ciccone,* 415 F.2d 331 (8th Cir.1969).

sentence in prison. She claims that she desires to remain in prison for religious reasons. *See Plaintiff's May 30, 1991 Opposition* at 4. Defendants object to waiver of good time credit, arguing that there is no right to prolonged confinement at government expense, and that allowing Plaintiff to waive her good time would hamper prison management. *See Defendants' Motion to Dismiss* at 5–6. However, the Defendants fail to discuss the most important aspect of this case—namely, whether one is obligated to accept a right or privilege to which he or she is entitled.

One is not obligated to exercise a right or privilege—even when collateral benefits to society may be lost as a result. This ability to waive rights and privileges makes eminent sense, for compelling one to accept a right or privilege nullifies free will and the power to choose—the raison d'etre of rights and privileges. While this "right" to refuse privileges or rights is not included in the Constitution and the Bill of Rights, the Ninth Amendment instructs courts not to construe the Constitution and the Bill of Rights as an express delineation of the rights of the people. *See* 3 J. Story, *Commentaries on the Constitution of the United States* 715–16 (1833). *See also* L. Tribe, *American Constitutional Law* § 11–3, at 774–777 (2d ed. 1988). For this reason, American citizens are not compelled to vote and are not compelled to speak out on public issues, even though society may ultimately pay the cost of these decisions. *Cf., e.g., Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (may waive Sixth Amendment right to counsel, provided it is knowing and voluntary); *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969) (may waive right against self-incrimination, confrontation, and right to jury trial); *Tollett v. Henderson,* 411 U.S. 258, 262, 93 S.Ct. 1602, 1605, 36 L.Ed.2d 235 (1973) (guilty plea waives right to challenge deprivation of non-jurisdictional Constitutional rights prior to trial); *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973) (waiver of Fourth Amendment rights by consenting to warrantless search). *See generally* J. Palmer, *Constitutional Rights of Prisoners* § 9.4.6, at 146 (4th ed. 1991).

Presumably, Defendants' argument centers on the idea that society will *directly* pay the costs of the Plaintiff's decision to waive her good time credits. Defendants offer no legal basis for denying Plaintiff's ability to waive good time credits on these grounds. In fact, in light of the parole policies, it is doubtful that Defendants can articulate a rational basis for the refusal to allow waiver of good time credits. As the Plaintiff correctly points out, by statute, an inmate has the right to decline consideration for parole. *See* Exhibit 3, *Plaintiff's May 30, 1991 Opposition. See also* 28 C.F.R. § 2.11(b) ("A person may knowingly and intentionally waive any parole consideration on a form provided for that purpose"). If the Bureau of Prisons will permit society to pay the costs of a parolee's choice, there is no reason why recipients of good time credits do not deserve the same option.

Rather than focusing on the pivotal question of waiver, Defendants offer reasons why waiver would not be advisable as a matter of social policy. None of these arguments overcome the presumption that one can waive or refuse to exercise rights or privileges. Moreover, none of the social policy arguments are persuasive.

According to the Defendants, allowing the Plaintiff to waive good time credit would allow her to prolong her confinement for a period of time longer than is statutorily mandated. This argument falters, however, because release for good time reduces the amount of time which the inmate must spend in prison just as parole reduces the amount of prison time. Pursuant to 28 C.F.R. § 2.11 of the parole regulations, inmates may already "opt" to remain in jail for a longer period of time than is statutorily mandated. It hardly seems unnatural or unfair to allow an inmate beneficiary of good time credits to do the same.

The Defendants also contend that allowing an inmate to waive good time credit would frustrate the ability of prisons to handle overcrowding problems. This argu-

ment is also untenable. First, as explained above, inmates may waive parole consideration despite the fact that this decision might effectively increase the prison population. It is illogical to deny beneficiaries of good time credits the ability to do the same. Second, the Defendants' assertion that good time credits are designed to decrease prison populations is unsupported. This theory has no textual support in the statute or its legislative history. Indeed, the legislative history clearly proclaims that good time credit system was enacted "to grant [ ] rewards to prisoners as incentives to good behavior and rehabilitation." S.Rep. No. 108, 80th Cong., 1st Sess. 1, *reprinted in* 1947 U.S.Code Cong.Serv. 1070. Thus, the credit is a reward belonging to the prisoner and, as such, the prisoner should be able to refuse it.[3] Finally, Defendants' overcrowding argument strains credibility because it is doubtful that many prisoners would choose to remain in prison when given the choice of returning to the "outside" world. Any increase in overcrowding as a result of allowing waiver of good time credits would be negligible, at best.[4]

Accordingly, it is, by this Court, this 24 day of July, 1991,

ORDERED that the Plaintiff's Motion for Summary Judgment shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the Defendants' Motion to Dismiss shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, DISMISSED from the dockets of this Court.

---

[3] Finally, the Defendants' argument would set in motion perverse incentives for inmates such as the Plaintiff. If an inmate chooses to serve the remainder of the sentence in jail—and it is beyond cavil that the *vast* majority of inmates would leave confinement at the earliest available opportunity—the Defendants' policy gives that inmate an incentive to violate prison regulations in order to forfeit any good time credits. Rather than put an inmate with religious or other convictions in this position, prison officials would be better advised to allow an inmate either to use or to refuse those credits to which he or she is entitled.

[4] Of course, nothing in this Opinion precludes the Defendants from building more prisons to alleviate overcrowding, nor does this Opinion restrict the Defendants' ability to transfer inmates, or to employ other management techniques.